In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-05-528 CV


____________________



ERWIN LO, M.D., ERWIN LO, M.D., P.A.,


AND GOLDEN TRIANGLE NEUROCARE, Appellants



V.



LARRY HIGGS, Appellee






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E175293






MEMORANDUM OPINION


 In this medical malpractice lawsuit brought by appellee Larry Higgs, appellants
Erwin Lo, M.D., Erwin Lo, M.D., P.A., and Golden Triangle Neurocare, appeal the
denial of their motion challenging the expert report. See Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(l) (Vernon Supp. 2005). (1) We reverse and remand for further proceedings
consistent with this opinion.

Background


 Higgs alleged Lo negligently performed his back surgery, a lumbar inter-body
fusion with instrumentation, and he asserted Erwin Lo, M.D., P.A. and Golden Triangle
Neurocare were liable under principles of respondeat superior and agency. Higgs
contended he developed low back pain after the surgery, and it was later discovered that
pedicle screws were improperly placed "dangerously close to the iliac vein." Another
physician removed the screws in a subsequent surgery. 

 The report by Higgs's expert, Dr. J. Michael Graham, stated in pertinent part:


 The standard of care for a [n]eurosurgeon . . . in the evaluation and
treatment of a patient such as Larry Higgs required the following:


 1. A careful history and physical examination.

 2. Adequate pre-operative diagnostic evaluation including
imaging studies.

 3. A proper surgical approach.

 4. Proper intra-operative imaging studies to ensure proper
placement of the spinal instrumentation.

 5. Proper placement and positioning of the pedicle screws
in the vertebral bodies thereby avoiding injury, or
possible injury, to the vascular structures adjacent to the
spine.

 6. Adequate post-operative imaging studies to ensure
proper placement of the pedicle screws prior to the
conclusion of the surgical procedure. 

 

 As you know, Erwin Lo, M.D. is a Neurosurgeon who performed a
posterior lumbar decompression, instrumentation, and fusion surgery on
Larry Higgs. . . . It is my opinion, which is based on my review of the
medical records and my training and experience as a board-certified
Orthopedic surgeon, that Erwin Lo, M.D. provided surgical treatment which
was not consistent with the standard of care for this type of surgery, because
one or more of the pedicle screws used at the time of surgery were not
positioned correctly, thus constituting a breach of the standard of care, which
proximately caused Larry Higgs to have considerable risk for post-operative
complications, and which ultimately proximately caused him to require
corrective surgery. 


 If the surgical care provided by Erwin Lo, M.D. had been consistent with
the standard of care, then additional corrective surgery with its attendant
risks and extensive post-operative treatments would have been prevented, in
reasonable medical probability.


The report does not discuss Erwin Lo, M.D., P.A. and Golden Triangle Neurocare.

 After Higgs provided the expert report, appellants filed a motion to dismiss the suit,
asserting the report was vague, conclusory, and did not constitute a good-faith effort to
comply with the Medical Liability Act's definition of "expert report." See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(l), (r)(6) (Vernon Supp. 2005). In his response to
the motion to dismiss, Higgs requested a thirty-day extension of time in the event the trial
court found the report deficient. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c)
(Vernon Supp. 2005). After a hearing, the trial court denied both the motion to dismiss
and Higgs's request for a thirty-day extension. Appellants then filed this interlocutory
appeal. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon Supp. 2005).

Appellants' Issue


 In their sole issue, appellants contend the trial court abused its discretion in denying
their motion to dismiss. We review a trial court's decision regarding the adequacy of an
expert report under an abuse of discretion standard. Am. Transitional Care Ctrs. of Tex.,
Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001). "A trial court abuses its discretion if
it acts in an arbitrary or unreasonable manner without reference to any guiding rules or
principles." Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). A trial court
also abuses its discretion if it fails to analyze or apply the law correctly. Walker v. Packer,
827 S.W.2d 833, 840 (Tex. 1992). However, a trial court does not abuse its discretion
merely by deciding a discretionary matter differently than an appellate court would in a
similar circumstance. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242
(Tex. 1985). 

 Plaintiffs asserting a healthcare liability claim must provide each defendant
physician and health care provider (2)
 with an expert report no later than the 120th day after
filing suit. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2005). The
statute defines "expert report" as

 a written report by an expert that provides a fair summary of the expert's
opinions as of the date of the report regarding applicable standards of care,
the manner in which the care rendered by the physician or health care
provider failed to meet the standards, and the causal relationship between
that failure and the injury, harm, or damages claimed. 


Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (Vernon Supp. 2005). If the plaintiff
furnishes the required report within the time permitted, the defendant may file a motion
challenging the report. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l) (Vernon Supp.
2005). 

 The statute provides the trial court "shall grant a motion challenging the adequacy
of an expert report only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an expert report
in Subsection (r)(6)." Id. When determining whether the report represents a good-faith
effort, the trial court's inquiry is limited to the four corners of the report. Wright, 79
S.W.3d at 53 (citing Palacios, 46 S.W.3d at 878). To constitute a good-faith effort, the
report "must discuss the standard of care, breach, and causation with sufficient specificity
to inform the defendant of the conduct the plaintiff has called into question and to provide
a basis for the trial court to conclude that the claims have merit." Palacios, 46 S.W.3d
at 875. A report that omits any of the statutory elements is not a good-faith effort. Id. at
879. Likewise, a report that merely states that the expert knows the standard of care and
concludes it was not met is not sufficient. Id. at 880 (quoting Chopra v. Hawryluk, 892
S.W.2d 229, 233 (Tex. App.--El Paso 1995, writ denied)).

 Appellants contend the expert report does not contain a fair summary of the manner
in which the care rendered failed to meet the standard of care and the causal relationship
between the alleged failure and the injury. The expert report states that Lo's treatment of
Higgs was inconsistent with the standard of care because the pedicle screws used during
Higgs's surgery "were not positioned correctly," requiring Higgs to undergo corrective
surgery. The report does not explain how the positioning of the screws was incorrect (e.g.
excessively deep, too shallow, incorrect angle, too loose, too tight) or how many screws
were incorrectly placed. See id. at 875. 

 The report further states that the "incorrect" positioning of the pedicle screws
constituted 

 a breach of the standard of care, which proximately caused Larry Higgs to
have considerable risk for post-operative complications, and which ultimately
proximately caused him to require corrective surgery. If the surgical care
provided by Erwin Lo, M.D. had been consistent with the standard of care,
then additional corrective surgery with its attendant risks and extensive post-operative treatments would have been prevented, in reasonable medical
probability. 


The report does not explain how the placement of the screws caused harm. Rather, the
report merely contains a conclusory statement that "corrective surgery" would have been
"prevented." In addition, the report does not state that post-operative complications
occurred or that extensive post-operative treatments were necessary after the subsequent
surgery. Therefore, the report does not comply with the requirements of the Medical
Liability Act. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l) (Vernon Supp. 2005);
Palacios, 46 S.W.3d at 875, 879.

 Because the report does not fairly summarize the manner in which the treatment
rendered breached the standard of care and the causal relationship between the alleged
breach and the injury claimed, the trial court erred in finding the report adequate. See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (Vernon Supp. 2005); Palacios, 46
S.W.3d at 880. Higgs argues that if this Court determines the report is inadequate, we
should remand the case for the trial court to reconsider his request for a thirty-day
extension. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (Vernon Supp. 2005). 
Appellants argue Higgs did not preserve the issue because he failed to file a notice of
appeal. See Tex. R. App. P. 25.1(c). We disagree with appellants. Rule 25.1(c)
provides:

 A party who seeks to alter the trial court's judgment or other appealable
order must file a notice of appeal. . . . The appellate court may not grant a
party who does not file a notice of appeal more favorable relief than did the
trial court except for just cause.


Id. Higgs is not seeking a more favorable judgment from this Court than that rendered by
the trial court. Therefore, Higgs need not file a notice of appeal as to the denial of his
motion for extension of time. See id. We remand for further proceedings consistent with
this opinion. 

 REVERSED AND REMANDED.




 
 STEVE McKEITHEN

 Chief Justice



Submitted on March 9, 2006

Opinion Delivered March 30, 2006


Before McKeithen, C.J., Gaultney and Kreger, JJ. 
1. Although section 74.351 of the Medical Liability Act has been amended since
Higgs filed suit, we will cite to the current version, since the amendment does not
substantively change the law applicable to Higgs's claims.
2. The Medical Liability Act defines "health care provider" as "any person,
partnership, professional association, corporation, facility, or institution duly licensed,
certified, registered, or chartered by the State of Texas to provide health care, including: 
. . . a health care institution." Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(12)(A)
(vii) (Vernon 2005).